The court will next call cases 119-945 and 119-960 consolidated, the Hertz Corporation, etc. et al. v. City of Chicago v. Enterprise Leasing Company Chicago LLC et al.  Justice Garman, members of the court, Ms. Solomon, my name is Kevin Ford. I'll be presenting the argument for Enterprise, and I will be splitting the argument 10-10 with counsel for Hertz, Mr. Skodro. The primary issue presented in this appeal is whether a vendor who engages in a transaction entirely outside the city of Chicago can be required to pay a tax to the city, can be required to collect the tax on behalf of the city. Enterprise and Hertz rent vehicles from locations all over the state, including suburban Cook County. This appeal concerns locations that are located in the suburbs within three miles of the city of Chicago. It has been the law of this state for 150 years that a municipality or a local government has no power outside of its borders to tax, to regulate, to legislate. This principle has been affirmed by this court as recently as the Commercial National Bank case. The appellate court acknowledged this lack of power, but still nevertheless approved the collection scheme that is found in the administrative ruling, ruling 11. How did this distinguished panel in the appellate court lose its way? I suggest in a couple of ways. First, it bought into the city's argument that this case is all about the lease tax, the use of a vehicle on the city streets. That is not what this case is about. This case is about collecting, requiring an entity outside the city to collect a tax that may be due on that use. When you consider that the transaction, no part of this transaction occurs in the city. All of enterprises and all of HRSA's activities occur outside the city. Now, they reach this jurisdiction through use of a presumption. And I can tell you, give you a simple example of how the presumption can work. An individual can, a Chicago resident can go into Evanston, let's say, rent a car, drive to Wisconsin, drive to Canada, come back, never enter the city streets, return that car to the location where it rented the car, and according to the city, that transaction comes within the city's jurisdiction to require that entity to collect the tax. And I submit to you, and I think the facts are obvious, that the city of Chicago has no more power over that transaction than the city of Springfield. And by the way, enterprise and HRSA have no control over where the person takes that car when they lease the car. The appellate court, I think, was influenced by the fact that in that transaction, they would say, the appellate court's view was, well, that's a simple exemption. That's no big deal because in the transaction that I just described, that would be exempt. But that misses the whole point. Exemption means you're subject to the tax and you get an exemption. The city has no power whatsoever over that transaction. So the fact that it's simple, and we disagree very much with the position of the city that it's a simple process to get the exemption, but it's quite complicated, in fact. And if they fail in getting the exemption, they're subject to tax penalties, et cetera. There's another problem, a very serious problem, with this presumption in this administrative ruling that is not in the ordinance. The presumption is not in the ordinance and the process that I'm about to describe is not in the ordinance. Under Section 5 of the ordinance, under Section 5 of Ruling 11, not the ordinance, under Section 5, there is an alternative payment plan. Instead of keeping records, the lessor, Hertzor Enterprise, can pay a tax on 25 percent of the rentals by city residents. Now, you can see from the simple description of that process, that has absolutely nothing to do with the use of city streets. It doesn't matter how many of those transactions, how many times those lessees use city streets, 25 percent of all transactions are subject to direct payment by the lessor. They have nothing to do with the use of city streets by the lessee. And that process is clearly unauthorized by the ordinance and it's clearly well beyond the power of the city to tax leases. And that's what that is, a tax on leases. These leases occur completely out of the city. The other way the appellate court went wrong, in our view, is they found that they looked to the case of Mulligan, which you'll hear more about from Mr. Skodro. The Mulligan case, in the Mulligan case, there's some language by the court that if you're doing business in the city, even if it's unrelated to the tax, to the transaction that they desire to tax, if you're doing business in the city, you can be required to collect taxes on behalf of the city. We gave some examples in our brief. I'll give you another simple one. If a shoe store has a location in Chicago and another one in Milwaukee, if you bought shoes in the Milwaukee store, according to the city's claim to power, that Milwaukee store could be required to collect that tax if you're going to wear the shoes in Chicago. And that reach, that is not what Mulligan holds. That is not what it was intended to hold. They seized some language about doing business in the city. In the Mulligan case, the transaction occurred in the county. A dealer brought, a wholesale liquor dealer brought liquor into Cook County, and it was because they brought the liquor into Cook County that that's where the transaction occurred. And Cook County clearly had authority there. A few other comments about Mulligan. When reading Mulligan, the court, at the conclusion of the opinion, the court said if you're looking at the subject of extraterritorial power, extraterritorial jurisdiction, look at Carbondale versus Venata, and that was a decision that was decided the very same day. And Carbondale versus Venata clearly holds that a city has no jurisdiction, even a home rule unit, outside of its territory. And Venata, the city attempted to regulate zoning a mile and a half out of its jurisdiction. Commercial National Bank also mentions Mulligan and says, Mulligan, it was the sale of alcoholic beverages within the county that was being taxed. That is, within the county. Significantly also, Justice Underwood, who wrote Mulligan, commented in Commercial National Bank in a dissenting and concurring opinion that he would hold the service tax in Commercial National Bank unconstitutional and invalid because it exceeded the territorial powers of the city in that case. If the tax collection procedures and responsibilities in Commercial National Bank were invalid, so are the procedures in this case. My ten minutes are up. I yield out to my co-counsel, unless the court has any questions. It doesn't appear to. Good morning, and may it please the Court. Michael Skodro on behalf of the Hertz Corporation. I'd like to build on a couple of the points raised by Mr. Ford, and in doing so touch upon what I think were the two errors that were made by the lower court below. One involves the fact that there was a use tax at issue in this case and what effect that has on the analysis. And the second error was the lower court's, the appellate court's, decision to rely upon due process case law in evaluating the challenge under Section 6A of Article 7, the extraterritorial taxation challenge. I think those are the two legal errors at issue in this case. And I think that if we return to first principles for Section 6A, both of those errors, why they're there and what the right answer is, comes into sharp relief. As this Court has repeatedly recognized, and as we point out in detail on page 18 of our opening brief, the framers were very concerned in crafting Section 6A that there not be unchecked extraterritorial regulation on the part of Home Rule units. And as this Court has repeatedly recognized, the reason this is a concern, the potential problem here, to put it in the words of this Court in Commercial National Bank, they referred to the serious problems, this Court's words, that could arise with unrestrained extraterritorial exercise of Home Rule power, including tax power. And so what has the Court done? Well, the Court has consistently, not just Commercial National Bank, but this Court consistently and the appellate courts have faithfully applied this rule consistently. The Court has never permitted a Home Rule unit to deputize or enlist an extraterritorial entity to serve as a tax collection agent unless there is a physical connection between that agent, that extraterritorial entity, and the transaction at issue. Now, the reason for this becomes fairly clear when you think about the potential for chaos, for the serious problems, without that rule. It's that rule, that requirement of a physical connection between the tax collector and the Home Rule unit that avoids a circumstance in this case, for example, in which one could walk into a rental agency and be presented with a list of 20 or 50 or all 200 Home Rule jurisdictions in the state and be asked as a customer to allocate your predicted driving time and use among those jurisdictions. What prohibits that from happening is the requirement that there be some physical connection. It could be delivery into the jurisdiction. It could be that the transaction itself is executed in the jurisdiction. But some physical connection between the transaction at issue and the Home Rule unit. And that is a rule to which this Court has consistently hewed. Now, the confusion below, I think, is the fact that transaction is part of that analysis and the lower court, the appellate court, concluded, well, you're talking about a transaction. You must be thinking mistakenly like this, that this is a transaction tax, not a use tax. But that distinction goes to the legitimacy of the underlying tax, that is the legitimacy of whether or not the user here, the person renting the vehicle, it goes to the legitimacy of whether they have to pay a tax, whether they might in theory be on the hook for it. But it says nothing about this Court's longstanding requirement that there be a physical connection to the transaction for purposes of enlisting, of deputizing an extraterritorial agent to serve as the tax collector. And the reason why that test is agnostic as to whether it's a use tax or a transaction tax or any other kind of tax is the one I gave a moment ago. It's only that requirement that there be that connection to the transaction, that physical connection. That's the only thing preventing the serious problems that this Court has identified in Commercial National Bank. And I would, although the Court was talking in this particular passage I'm about to refer to, it wasn't the extraterritorial portion of the opinion. I think it was in the occupation tax portion of the opinion. But the bottom of page 69 and the top of page 70 of Commercial National Bank, this Court outlines and puts some real detail on its vision of what that serious problem would look like. And the description the Court provides is equally applicable to what would happen here if there were not this requirement of some connection. Now, this also, so that addresses the first of what I've identified as the Appellate Court's errors. But it also goes directly to the second of the Appellate Court's errors. I mentioned that the Appellate Court, and we make this point in our brief, the Appellate Court made the mistake of relying upon due process federal, due process case law, to understand the limits of Section 6A, and in particular the phrase, pertain to its government and affairs. That's the phrase in 6A that this Court has referred to as imposing a limitation, a strict ban on extraterritorial regulation. So in interpreting that phrase, the lower court relied upon the Browns Furniture Case, which is a federal constitutional challenge. And more broadly, in the briefing before this Court, the defendants have asked to rely upon due process cases, a string of them, including the Irwin Industrial Case, which is a case decision by this Court, again, as a matter of federal constitutional law. The reason due process has no role to play, and the reason it's critical to distinguish between a due process analysis and a home rule, Section 6A analysis, is because they could not be more different in terms of what they're trying to protect. The due process clause exists, and the tax analysis, for decades in the U.S. Supreme Court, under the due process clause, exists to protect the taxpayer or the tax collector for their personal freedoms. So they're not surprised, out of the blue, by a jurisdiction with which they have no contact, suddenly coming to them and asking that they collect taxes or that they pay taxes. That's what due process is about. It's about those individual liberties. Section 6A, in contrast, as we've just talked about, really exists for a very, very different reason. 6A is not concerned about the individual liberties. 6A is concerned about the structure. It's a structural protection against the serious problems that would arise if different jurisdictions were permitted to impose competing taxes, I want to note, and on entities, rather, in those various jurisdictions. It's the laundry list of 200-plus home rule units, each of them laying independent claim to a use tax on a rental vehicle, for example. That's an entirely different inquiry, and that structural inquiry requires far more in terms of a physical connection. And that's why this Court has consistently applied that rule, whether it be the Mulligan case, where there was physical delivery into the jurisdiction, whether it be Commercial National Bank, where this Court struck down the fact that a tax was being imposed in part on transactions that had no physical connection to the taxing entity. And on that note, there is, as we identify, a separate constitutional error here. So I've talked about the broad 6A problem, the fact that they have deputized a tax collector without the necessary physical connection to the transaction, and they have therefore opened the door to what this Court has strenuously tried to avoid in its prior decisions. The second independent error is also actually addressed by Commercial National Bank. The second independent error actually does involve the fact that this is a use tax, unlike the first one. The second error is the fact that they're taxing 100% of the value, the full 9% on the lease price, when, in fact, all that's required as a matter of Ruling 11 is that there be 50% use in the city. Commercial National Bank faced precisely that same issue and concluded that that was unconstitutional because the use tax itself, putting aside who's the tax collector, the use tax itself is extraterritorial because half of the use in any given case could be outside of the taxing jurisdiction. Now, so that provides a separate independent concern and constitutional challenge, also covered by Commercial National Bank. Now, their answer to that, and I'll be brief, their response, the defendant's response on Commercial National Bank is that that case involved a service tax and not a use tax. But there's nothing in the logic of the opinion, and I can't come up with anything as a matter of constitutional law that would make any difference there. The fact is half of what was being taxed occurred in the jurisdiction, and this Court said that's impermissible as a matter of Section 6A, and that's precisely what's happening here. And so that is the second independent argument being made, an independent defect under Section 6A. If the Court has no questions. Thank you, Your Honor. Good morning, Your Honors. I'm Suzanne Loess. I represent the City of Chicago and the City Comptroller, Aaron Keene. May it please the Court. The tax ruling at issue here, Ruling 11, enforces a tax imposed by Chicago Ordinance on the privilege of using inside the city personal property that is leased or rented outside the City of Chicago. Ruling 11 explains the procedures and records required for car rental locations within three miles outside Chicago when they collect a tax owed by Chicago residents using the rented vehicles inside Chicago. This morning, I will explain that the tax collection is a proper exercise of home rule authority. It does not run afoul of due process, and its provisions are well within the scope of the ordinance. To begin with, just to clarify, there has been some confusion in the briefings. I hear it less this morning, but this is not a tax on the lease transactions that occur outside of the City of Chicago. The language of the ordinance carefully distinguishes between two types of taxes, with Prong 1 bearing on the lease or rental inside the City of Chicago of personal property, while Prong 2, which is what Ruling 11 is focused on, deals with a tax that is based on the privilege of using inside the city personal property that is leased or rented from outside of the city. So if you're renting from a location outside of the City of Chicago, the tax is on use inside the city, and the tax is only charged when there is use of the vehicle in the city. Ruling 11 deals with... Ms. Luce, is this just for Chicagoans on leasing outside the city? Ruling 11 applies only to Chicago residents leasing from within this three-mile zone outside of the city. And Ruling 11 is geared towards identifying when that use occurs and collecting it only when it occurs. And Ruling 11 is a proper exercise of home rule authority. Under the home rule provision... I agree, we should start with the home rule provisions of the Illinois Constitution as first principles. The city may exercise any power pertaining to the government and affairs of the city, including the power to tax. There's no requirement that the transaction in which tax collection occurs... I'm not aware of a case that says that that transaction in which tax collection occurs must be with inside the taxing jurisdiction. That would seem to not be the case in Mulligan, where this court approved a tax. The tax collection required here does pertain to the government and affairs of Chicago, because to begin with, of course, the plaintiffs do not dispute that imposing a tax on the lessees for the use of rented vehicles within the city is proper. That clearly pertains to the government and affairs of the city of Chicago. The dispute, of course, is over the collection at locations outside Chicago, and that question was answered long ago in Mulligan, where this court held that it is a proper exercise of home rule authority and it is not extraterritorial to require such tax collection of an entity that is doing business inside Chicago. And the car rental companies affected by Ruling 11 do business in Chicago in two significant ways. First, they have business locations inside Chicago, and also every single time the tax applies, it is their vehicles, it's Hertz's vehicles, it's Enterprise's vehicles that are being driven inside the city of Chicago. Having them collect taxes for the use of their property inside Chicago certainly pertains to the government and affairs of the city of Chicago. There is an effect on transactions outside of Chicago, but that alone does not make it extraterritorial. The way this operates, they have to determine when the lease is made where the vehicle is going to be used? When the lease is made, they need to ask of Chicago residents whether they plan to use the vehicle 50% of the time or more of the time in the city of Chicago. And based on that representation, if the answer is yes, they must collect the tax that is owed under the ordinance. And then there's a fallback provision, is that right? If they don't want to ask that question? If they do not comply with their... The ordinance requires the tax collectors to keep records, as most tax collection ordinances would do, to keep records of the taxable activity and exemptions. And if they fail to keep those records, then there is a presumption that comes into play which presumes that a Chicago resident is using... Renting from this location within the three-mile border of the city of Chicago is using the vehicle most of the time in the city of Chicago. And that presumption is consistent with the ordinance, which, of course, as I just mentioned, requires tax collectors to keep records of taxable use and exemptions. And when they fail to do so, the comptroller makes an assessment based on his best estimate. That's under Section 34180 of the Municipal Code. So it's actually the tax collector's burden to keep and provide evidence of tax activity and exemptions. And when the tax collector fails to do so, the ordinance provides for the comptroller to do the only thing he feasibly can, make a best estimate. And it's reasonable to make an estimate based on a Chicago resident renting from close to the Chicago border that they're using the vehicle inside the city of Chicago. Isn't it a bit tenuous, though, to make a determination how and where a short-term leased car will be used in comparison to maybe the purchase of a car by a Chicago resident at a suburban dealership? How and where a leased car is going to be used? Well, leased cars are often used during periods where cars are broken down or where the owner is in between vehicles, that sort of thing. And there certainly may be occasions... Normally when someone rents a short-term vehicle rental, they know where they live, they know where they work, they know what their plans are for the next few days or for the couple of weeks, they know whether they're going on a vacation, they know where they go to school, where they park their cars overnight. Garaging counts is used in the city of Chicago. It's not very tenuous. It's reasonable to expect that your average lessee is going to be able to answer that question with reasonable certainty, because they know generally what they're going to do. There may be some occasions that they may be unsure and perhaps they can't claim the exemption in that situation. And of course this is a facial challenge, though. If there's some case that's close to the line about whether or not the exemption applies, that's not a reason to facially invalidate this enforcement, this Ruling 11, this regulation. So even with the effect... Ms. Lowe? Yes. Let me ask you this. I want to make sure I'm looking at the right provision. This Ruling 11, is it the one that's the second amended ruling dated May 1, 2011? Yes, it is. And I want to make sure I'm focusing on the right part. When you said they ask the driver where they're going to use the car, is that what's referenced in Section 3 on recordkeeping with the two initials, or is there another portion of that ruling? No, I'm referring to Section 3, and specifically there are two questions that we have asked of lessees about whether they'll be using their vehicle most of the time inside Chicago or outside of Chicago. Well, it's an either-or, isn't it? They either check the first box or the second box. Correct. No other information is gathered. That's correct. And I would submit that evidence of the vehicle owner's planned use is evidence of their use, as it is a statement of intent of where they plan to drive, where they'll be garaging their vehicle if it's in their home, is evidence of use inside the city of Chicago. Moreover, I would note that the actual tax is collected at the time of rental payment, and that may or may not occur before. Often the rental payment, as Hertz agreed in its brief, usually that happens at the end of the rental period. So if the use, in fact, does not occur during the rental period, there's always that occasion to correct the records and claim and receive, well, a refund wouldn't be necessary if the tax hadn't been paid yet, but to claim a credit if the plans of that particular lessee didn't work out in that circumstance. But in any event, the effect on transactions outside of Chicago alone is not enough to make this extraterritorial, or it would have been so in Mulligan, which the whole point was whether or not an outside entity could be required to collect a tax when the wholesaler was doing business with the retailers in Cook County. Hertz and Enterprise, one, reduced the significance of Mulligan based on deliveries, and there are two significant problems with that, and one that wasn't the rationale of the court. The court relied on doing business with Cook County retailers, and I submit that's not meaningfully different than the business of renting vehicles that are regularly used in Chicago. And if delivery is significant, it's because delivery is when the tax collector would enter the taxing jurisdiction and, albeit for that brief moment, receive the benefits and services of the jurisdiction. But here, the tax collector benefits from municipal services to a far greater extent, not only because they have business locations within Chicago borders, but each and every time the tax is owed, it's their vehicles that are inside Chicago, their vehicles receiving the benefits and protections of Chicago municipal services. Now, they emphasize a lack of knowledge or control over where their customers drive, but all they have to do is ask the simple question, that's all we're asking, and their desire not to do so does not take this out of the realm of activity that pertains to the government and affairs of Chicago. Those cars, Hertz's cars, Enterprise's cars, benefit from the road maintenance in the city of Chicago. If a car breaks down on Lakeshore Drive or some other city street, the police come, the firefighters come, put out fires, write insurance reports that they will use to collect on insurance. Requiring the plaintiffs, that's a physical connection that we're talking about, a physical connection to the city of Chicago, that surely must be it. Requiring the plaintiffs to collect taxes in exchange surely pertains to the government affairs of the city of Chicago in this situation. It's not extraterritorial, and we submit it's a proper exercise of home rule authority. And Hertz and Enterprise compare this case to Commercial National Bank, but I would like to note a profound difference that they ignore. This is a lease of their property. So when you're dealing with a tax on services or a tax on sales, those kind of situations do not involve the presence of the tax collector's property inside the taxing jurisdiction being protected by municipal services the whole time. If this is a tax on usage of the vehicle, wouldn't the rationale of the person coming from outside the city using the car to drive only in the city not be subject to the tax? What's the rationale for being a resident of the city of Chicago to give credence to the presumption that it's being used there? Well, the tax would be owed also if someone from outside came in and used their rented vehicle in the city of Chicago. I think the purpose of the regulation is to try to zero in and require the tax collection where it's highly likely that taxable use is going to be occurring. So if you're a Chicago resident renting from close in, those are situations where those residents may well be using them while their car's in the shop or while they're in between vehicles, that sort of thing. And so there's maybe a higher likelihood that we're going to find taxable activity. But certainly the tax would still be owed under the ordinance for any lessee using vehicles within the city of Chicago. This regulation, though, would not apply in that circumstance. As far as setting the amount of the percent of the rental price, that does not make this tax extraterritorial. That was a part of this court's rationale, amongst other reasons, for finding the service tax at issue in Commercial National Bank extraterritorial. But use taxes are different. Traditionally, they're set at a fixed rate for the privilege of using as much or as little as a user wants in the taxing jurisdiction. That's how it's done under the Illinois Use Tax Act. That's how it was in the Irwin Industrial case. And that's why the court rejected proportionate adjustment in a case we cite in our brief, First Access Material Handling. Since there is one rate generally charged for any amount of use, of Chicago use, charging that amount does not amount to taxing activity that occurs outside of Chicago. And this court reached just that conclusion in the Irwin Industrial case, which I realize was a Commerce Clause case, but what it sheds light on about the nature of a use tax is what is significant here. And in that case, the court concluded that the tax charged for use in Illinois did not amount to taxing activity for the airplane in that case. It was also used in a number of other jurisdictions. We submit the same results here. And with respect to multiple or overlapping taxation, we submit there is no concern about double taxation with a regulation such as this because the lessee is only going to owe the tax in the jurisdiction that he or she is using the car more than half the time. If it's exactly 50-50 between two jurisdictions, well then that lessee can pay the tax in one jurisdiction and claim a credit in the other. So there's really no risk of double taxation. We further submit that Ruling 11 satisfies due process as well. The test there is minimum contact, whether or not the tax collector has minimum contacts with the taxing jurisdiction. We submit that the United States Supreme Court or any court of this state has ever applied the minimum contacts rule to interstate taxation or regulation. And it's not the appropriate test as we explain in our brief. But even if it were, it is amply satisfied here because the car rental companies affected have ample connections with the City of Chicago both in the rental locations they have within the City of Chicago as well as the connection that they have by leasing their property which comes into the City of Chicago. And we submit that a transaction must take place within the taxing jurisdiction only if that is the tax activity. There is no requirement that where the tax activity is used of the tax collector's property in the taxing jurisdiction that the collection must also occur in the taxing jurisdiction. And National Geographic is the case we elaborate on in our brief, holds just the opposite. There, there was a presence of just two ad sales offices in California unrelated to the mail order transactions. And it was those ad sales offices that supplied the minimum contacts that allowed California to require tax collection for mail order sales from D.C. and Maryland, even though California ad offices were not involved in that, in the ad sales. So too, the presence of numerous rental car locations in Chicago by Hertz and Enterprise establishes minimum contacts, and it is also settled that the presence of personal property in a jurisdiction establishes minimum contacts. Here, again, whenever the tax applies, it's the car rental company's own property that is being taxed, that is being, I'm sorry, that is being used in Chicago. These connections amply justify imposing a tax collection in exchange for the municipal services provided both at their Chicago locations and for their vehicles that are being used in Chicago. We also submit that Ruling 11 does not exceed the Chicago Personal Property Lease Transaction Ordinance. It implements tax collection on the very use of rented vehicles inside Chicago that the ordinance itself requires of lessors. And it makes clear that the tax applies even when rented personal property is being quote, leased or rented outside the city. And there are two provisions that require lessors to keep accurate records of taxable activity, including exemptions. Ruling 11, in turn, explains the way to document the taxable use of exemptions. So this is an enforcement explanation about how the ordinance applies to this particular car rental business. And the presumption, we already covered that. But as I mentioned before, it only comes into play when the tax collector has not met its obligation of keeping the ordinance required documentation. So it's actually the tax collector's burden to keep and provide evidence of tax activity and exemptions. And the comptroller will rely on the presumption to make his or her best estimate when that is missing. And the plaintiffs insist that Ruling 11 exceeds the ordinance because it relies on presumptive or attended use, but that's not so. Ruling 11 explains that the tax is triggered by use in Chicago, but it discusses what evidence will prove that use. That is what the representations in the lease or related documents that we ask for is intended to do, to provide evidence of use, not to displace the requirement of use. So for all these reasons, the comptroller's explanation of how the ordinance applies to short-term car rentals is not arbitrary. It's wholly consistent with the plain language of the ordinance. We submit it to proper exercise of Home Rule authority, and it does not run afoul of due process. If there are no further questions, I will briefly conclude. We do ask that the judgment of the appellate court be affirmed. Thank you. Thank you. Thank you, and may it please the court, a brief rebuttal on a few points raised by counsel for the defendants. It's essential from the outset to make clear yet again that the challenge here is not to, other than the 50% translating to 100% tax, 50% use, the challenge here is not to the underlying legitimacy of taxing for use in the city as a general concept or even here. The challenge is not to the idea that the city could go to Springfield and seek General Assembly authorization as Section 6 elsewhere provides for an extraterritorial tax, or they could, you know, add to a parking tax or a gas tax, other things that within their jurisdiction would capture use of a vehicle within their jurisdiction. That is not the challenge here. The concern we have, well, I should add, nor is this a challenge to the degree of fit between the three-mile barrier and the presumption that's being raised and use in the city. This isn't sort of an equal protection challenge or another constitutional challenge where the rationality of the fit or the connection is what's at issue. They may be right, they may be wrong empirically about the fit or the likelihood that these cars are being used presumptively within the city. What matters is that they have deputized someone outside of their borders to engage in the tax collection and record-keeping effort. That's what's critical here. Again, nothing to do with the legitimacy of trying to capture value for use within their borders. Now, there was some mention that the delivery isn't significant. The delivery is critically significant. The delivery is part of the transaction. As we explained in our reply brief, the transaction defined broadly to include the exchange of money, the delivery, all of that is part of the transaction. And the reason there needs to be a physical connection is to avoid the issue that I mentioned at the outset, which is coming in and getting a form with 200 home-ruled jurisdictions. They've noted that it's of no constitutional moment that, in this case, the presumption turns on having a Chicago driver's license or an address within the city. That's not part of the constitutional analysis. So there's nothing to prevent, under the constitutional theory advanced by the defendants, a collection of 200 home-ruled units from around the state, and you have to go through and figure out where you intend to use the car. And none of the limiting principles they've discussed, whether it be business location, well, Hertz is all over the state. Enterprise is all over the state. Other businesses are all over the state. That doesn't provide the limit necessary to avoid the serious problems as this Court has described it. That's why some physical delivery, that limits. That means on that transaction you can be asked only in one jurisdiction or two at most where you have your physical presence for the dealership in that or the rental agency in that instance. Indeed, we could easily imagine a circumstance now where if Evanston and, let's say, Cook County, both are home-ruled units, both of them could, if they decided to pass similar taxes with a similar order, one could walk in, even with the current scheme, the Ruling 11, and assuming each of those jurisdictions had an analogous Ruling 11, you could be asked about how much time in Evanston, how much time in the city, and how much time in the county, which, of course, embodies both Evanston and the city. And you could be asked about use in all three. And, in fact, you could be 50, 50, and 100. You could actually be taxed fully in all three jurisdictions under the current rationale, even that the 50 percent is what creates the trigger. So none of the things they've offered, whether it be the fact that you have a business location, the fact that you're driving into that jurisdiction, none of those limits the number of potential jurisdictions that could be imposing their own tax regimes with their own independent record-keeping requirements, with their own auditing measures, all of those could be stacked one on top of another under the constitutional principle that's being advanced today. Nor is there any, and I should mention, magic to the fact that it's within three miles. I think that came up in the course of discussing how rational the presumption is here that use will be in the city. But, again, the rationality of that presumption is not of constitutional moment to the 6A inquiry. And I should note that the defendants have never taken the position, I think, in this case, that three is a magic number or that three is of constitutional significance. Indeed, if you've seen in the briefs, you've seen that the original provision captured rental in all Colorado counties. The second version of the ruling did not have a geographic limit. And then the current ruling has the three-mile limit. So I think there has not been an argument advanced by the city, at least that the fact that it happens to be close in under this ruling is constitutionally significant. I should also note that they talked again about the first access case, and I just remind the Court again that's a federal constitutional case. I think it was being talked about in the course of the extraterritorial discussion this morning. And, again, it's just important to maintain a strict border between those two breeds of analysis because they are there to do such different things and, therefore, the inquiries are so very different between them. Finally, there was some discussion of Mulligan, and as we point out in our reply brief, it's not only the case that we know from the briefing in that case that the delivery was being made by the wholesaler into the taxing jurisdiction, but this Court characterized Mulligan in Commercial National Bank in 1982, and in doing so, it seems clear in context. The Court refers to the fact that they were doing business, the wholesalers were doing business, in the taxing jurisdiction, and the very next sentence then talks about sales within the taxing jurisdiction. So it seems clear in context that this Court has characterized Mulligan to recognize that there, there was physical delivery of the material goods into the taxing jurisdiction. Finally, I would note that, or nearly finally, I would note that in this case, once again, one cannot use an administrative presumption to confer taxing jurisdiction. That's what is at issue in this case. And finally, there was some discussion at the outset, and I think it's important, again, to return to first principles about the fact that there's some effect outside the borders doesn't change the fact that this pertains to Chicago's government and affairs. That's precisely the argument that this Court and the appellate court has repeatedly rejected. If we think, for example, about a case like Van Noten, well, of course, the zoning that was at issue within a mile and a half of the municipal border in that case, the home rule borders, yes, that had an effect on the municipality. That's precisely why they opted to try to regulate it. I think the outer boundary of this is probably the second district's decision in In re Application of Anderson. That's a case, applying this Court's, again, well-settled principles on extraterritoriality under 6A, that's a case in which the home rule unit tried to change its budget deadline, gave itself a few extra months to have its budget hammered out. And that was deemed extraterritorial. On the defendant's logic, that would, of course, have to pertain to government affairs at the home rule unit, and yet that was extraterritorial because it would have the indirect effect of causing the county clerk to have to take longer to work up the county numbers for that. That's enough to trigger the ban of extraterritorial taxation. Clearly deputizing extraterritorial entities to engage in bookkeeping requirements and to ask their customers these questions, clearly that is more than enough extraterritorial impact to run afoul of Section 6A. If the Court has no further questions. Thank you. Cases number 119945 and 119960, Consolidated, the Hertz Corporation, versus the City of Chicago, Enterprise Leasing of Chicago, will be taken under advisement of Agenda Number 14. Mr. Ford and Mr. Skodro, Ms. Lois, thank you for your arguments this morning. Thank you.